# Webb *v.* Danforth.

### In the Court below,

EDWARD DANFORTH, *Plaintiff ;* WILLIAM WEBB, RICHARD PRICE, and FREDERICK ROBBINS, *Defendants.*

THIS was an action of trover, stating, that the plaintiff was, on the 1st of August, 1801, possessed of the one undivided half of a vessel, and her appurtenances, the other half of which was owned by the defendants, as tenants in common with the plaintiff. On the 26th of said August, the plaintiff lost the same, which came into the defendants' hands by finding, and they neglected and refused to deliver it, though demanded. On the 22d of October, and on the first of November, 1801, the defendants converted and disposed of the said half of the vessel to their own use, &c.

Upon trial of this cause to the jury, on the general issue, the plaintiff claimed by virtue of a bill of sale,

*An action of trover cannot be sustained by one tenant in common, against his co-tenant, unless the property be destroyed.*

*A party to an instrument may be a witness to facts, subsequent to the execution thereof, which tend to invalidate it.*

WEBB
v.
DANFORTH.

1804.

signed by *Kinne & Park*, dated the 11th of April, 1801; and the defendants, by sundry bills of sale from *Kinne & Park*, subsequent thereto. The defendants contended, that they had no knowledge of the sale to *Danforth*; and offered *Kinne*, as a witness, to prove, that subsequent to the execution and delivery of the bill of sale to the plaintiff, and before the sales to the defendants, the plaintiff agreed with *Kinne & Park*, that they should keep possession of the vessel, after it should be finished, that it should be registered in their names, that they should sell it, as their own, and that, in the mean time, the bill of sale to the plaintiff should be kept secret; and that, in pursuance thereof, the plaintiff did keep said bill of sale secret, and that the vessel was registered in the names of *Kinne & Park*, and of the defendants. The plaintiff objected to the admission of *Kinne* as a witness, on the ground, that his testimony went to invalidate his own bill of sale. The Court excluded the witness; and a bill of exceptions was filed.

*Williams*, (of Hartford) for the plaintiffs in error.

1. This action cannot be sustained. Trover will not lie, by one tenant in common of personal property, against another tenant in common; and the reason is obvious,—the possession of one is the possession of both. Upon this subject, the authorities are too explicit to be doubted, and too numerous to be denied. So says the text of *Littleton*; so say the comments of *Coke*; (a) and Lord MANSFIELD says, " there is no *dictum* to the " contrary. The reason," he adds, " is unanswerable; " there can be no conversion." (b) One joint owner of personal property could hardly be punished *for stealing*

(a) *Co. Litt.* 199. 1 *Salk.* 290, *Brown* v. *Hedges*.
(b) *Cowp.* 450, *Fox* v. *Hanbury*.

that property. No more can he be answerable for converting it. In a late case, (c) it has been decided, that such an action would not lie, though a stranger was likewise made a defendant.

2. *Kinne* ought to have been admitted to testify, even if his testimony went to invalidate an instrument executed by him. In *Title* v. *Grevet*, (d) a person, who had conveyed land, was admitted to prove, that he had no title. Witnesses to wills have been repeatedly admitted to deny the sanity of the testator. (e) And so far has this principle been extended, that in *Wright* v. *Littler*, (f) the death-bed confessions of a witness to a forged instrument, were admitted as evidence. Lord MANSFIELD, indeed, in *Walton* v. *Shelly*, (g) speaks of a *rule established*, that a man may not invalidate an instrument, to which his name is affixed, as a party, or a witness ; but we surely have a right to ask, when, and by whom, this rule was established ; or in what case it was recognized, prior to that of *Walton* v. *Shelly ?* If one pleads usury, fraud, duress, or illegal consideration to a note, or bond, may not the witnesses be called upon to support such plea ? Are they bound always to conceal the truth, because they put their names to an instrument, which did not disclose it ? The rule of the civil law, *nemo allegans suam turpitudinem est audiendus*, is cited in the case of *Walton* v. *Shelly*. But, if you are to take your rules of evidence from the civil law, let it be remembered, that, by that law, father and son cannot be witnesses for each other ; neither can those, who are

1804.

WEBB
*v.*
DANFORTH.

(c) 1 *Term Rep.* 658, *Holliday* v. *Camsell.*

(d) 2 *Lord Raym.* 1008.

(e) 1 *Bla. Rep.* 365, *Lowe* v. *Joliffe.* 4 *Bur.* 2225, *Goodtitle* v. *Clayton.*

(f) 3 *Bur.* 1248.                    (g) 1 *Term Rep.* 296.

related to persons interested ; nor can any fact be established, by the mouth of a single witness. (h) In *Rich* v. *Topping*, (i) Lord Kenyon said, there had been different opinions about the case of *Walton* v. *Shelly*, and seemed at least to *doubt* it himself ; and, in *Adams* v. *Lingood*, (j) declared his opinion to be opposed to it. In *Jordaine* v. *Lashbrook*, (k) the case of *Walton* v. *Shelly* was overruled, by the Court of King's Bench.

But, if this rule is established, it is founded upon the paper currency of Great-Britain, and ought not to be extended farther than to negotiable instruments. The reason given, that third persons will be affected, applies, if not exclusively, yet certainly more strongly, to such instruments. Justice Buller, the champion of the rule established in the case of *Walton* v. *Shelly*, agrees, in *Bent* v. *Baker*, (l) with Lord Kenyon, that the rule extends to negotiable instruments only. And in conformity to their opinions have the courts in Pennsylvania decided. (m)

Objections to witnesses have lately been directed rather to their credit, than to their competency, both by the courts of Great-Britain, and our own courts. Were the rule as contended for by the defendant in error, it would only be necessary to get the names of those acquainted with the facts, on the instrument, and all evidence of its illegality would be excluded.

But, in this case, the witness was not called to *impeach his own deed*, but to show a fact, independent of

(h) 1 *Domat.* 449.　　　　　(i) 1 *Esp. Rep.* 176.
(j) *Peak's Ca.* 117.　　　　　(k) 7 *Term Rep.* 601.
(l) 3 *Term. Rep.* 34, 6.
(m) *Dallas* 196, *Pleasants* v. *Pemberton.*

It, which, with the *subsequent* conduct of the party, would render the deed, not void, but of no use. The facts, to prove which the witness was called, would not have rendered the deed, originally void; indeed, they are expressly stated to have been *subsequent* to the execution of the bill of sale, and, therefore, do not interfere even with the rule established in *Walton* v. *Shelly*. In *Charrington* v. *Milner*, (n) in a suit by an indorsee against the maker of a note, Lord KENYON admitted the indorser to prove, that the note *had been paid*, as such evidence would not prove it to have been *originally void*.

1804.

WEBB
*v.*
DANFORTH.

*Edwards*, (of New-Haven) and *Daggett*, for the defendant in error, admitted, that one tenant in common could not have an action against his fellow tenant, while the property was in existence. But that question could have been made only while the case was on trial to the jury. Where the possession is a tortious one, the principle does not apply ; and if the property be destroyed, by one tenant in common, the other may have an action. (o) So, in case of real property, a tenancy in common may be destroyed, by the act of one of the parties. (p) In trover for a ship, Lord KING left it for the jury to say, whether the ship was not destroyed. (q) Had we brought trespass, the common allegations, that the defendant carried away, and the plaintiff lost, this property, would have been sufficient ; and where trespass *vi et armis* will lie, trover will also lie.

From this declaration it appears, that the plaintiff and defendants were tenants in common of this property, in August, 1801 ; that it was converted by the defendants

(n) *Peake's Ca.* 6.
(o) *Esp. D'g.* 586. *Dub. ed. Co. Litt.* 200.
(p) *Comp.* 217, *Doe* v. *Fisher.*      (q) *Bul. N. P.* 34.

Q q

1804.

WEBB
v.
DANFORTH.

in November, 1801; here is nothing inconsistent with the supposition, that the property has been destroyed. The jury could not have found the conversion, without having found such facts as constitute a conversion. If the Court, therefore, think the destruction of the property the only evidence of a conversion, they will presume the jury have found it. It cannot be necessary to state in the declaration, that the property is destroyed. This declaration is drawn precisely according to the English forms.

The case of *Fox* v. *Hanbury* only shows, that one partner cannot maintain trover against another.

2. The witness was properly rejected, on the ground of interest. He was called upon to swear, that *Kinne & Park* were to dispose of a vessel, which they had already sold. No stronger case of interest can be put.

The case of *Title* v. *Grevet* is not law, in Great-Britain, any more than in Connecticut. A man is never permitted to contradict his own covenant; it is always an estoppel. But it does not appear, in that case, that the party warranted the land; he might only have released it.

The cases of *Lowe* v. *Joliffe*, and *Goodtitle* v. *Clayton* are cases of witnesses to wills; and it is singular, that Lord KENYON should say, those cases compared with the cases where the signers of notes and deeds are called as witnesses. In the one class of cases, they attest merely to the sanity of the party; in the other, they become parties.

In *Abrahams* v. *Bunn*, (r) Lord MANSFIELD recogni-

(r) 4 *Bur.* 2256.

zes the rule for which we contend ; and in *Walton* v. *Shelly* he speaks of it as A SETTLED PRINCIPLE OF LAW. ASHURST, J. in a late case, says, it is yet law.

In *Jordaine* v. *Lashbrook*, the question arose under the revenue laws ; and, in such cases, it is to be expected, that judges will lean as far as is consistent with integrity. The reasoning of Lord KENYON, in that case, however, is remarkable rather for its *pathos*, than its *soundness ;* for, if the name of a person is procured to be placed upon a writing *to prevent his being a witness*, he will not be disqualified. In England, four judges of the King's Bench have concurred in the rule adopted in *Walton* v. *Shelly*, and but three have opposed it. (*s*) That rule was recognized, by this Court, in *Allen* v. *Holkins*, (*t*) and several of the judges expressed an opinion, that *Walton* v. *Shelly* was good law.

But an attempt is made to distinguish this case from that, by saying that *Kinne* was called to prove facts subsequent to the making of the deed. But these facts go directly to show, that the deed was originally fraudulent. They must have been designed so to operate, or the plaintiffs in error must have expected to defeat our title by parol.

*Terry*, (of Hartford) for the plaintiffs in error, in reply.

1. The general doctrine is, that one tenant in common cannot maintain trover against his co-tenant ; and there is no exception to this rule. The reason is, that the use of the thing held in common, by one of the owners, is

(*s*) 1 *Esp. Rep.* 298.        (*t*) *Ante* 17.

*1804.*

WEBB
*v.*
DANFORTH.

not an injury, for which any action will lie ; for, by the tenure, they have an equal right to the use. If the property be destroyed, an action will lie, but not trover. BULLER, (*u*) indeed, speaks of the case of *Barnardiston* v. *Chapman* as an action of trover ; but *Espinasse* does not call it trover. If it was trover, it must have contained some allegation, that the property was destroyed.

It is said, the Court are to presume, that the jury have found the facts. It is admitted, that they must have found the *facts stated* to be fully proved ; but from the facts stated in this declaration, it does not follow, that the property was destroyed, but merely that the defendants used it as their own.

It is said, that it does not appear from this declaration, that the plaintiff and defendants were tenants in common. It is alleged, that they were tenants in common, on the 1st of August ; that the property was lost on the 26th, and then found by the defendants, and converted, on the 1st of November. They must, therefore, at the time of the conversion, have been tenants in common.

2. The question of *Kinne's interest* is not before the Court, and the Counsel had no right to argue from it. He was objected to, and excluded, upon another point. The party must be considered as having waived this objection ; for we cannot now shew, as we might have shewn, had it been made at the trial, how that interest was destroyed.

But admitting his interest in the case, it was equally strong on both sides. He had given a mortgage to *Danforth*, and a bill of sale to *Webb*, &c. If he estab-

(*u*) *Bul. N. P.* 35.

lished the second bill of sale, he remained debtor to *Danforth* to the amount of the first, for which *Danforth* had his note. His interest, therefore, was exactly ballanced.

The only question, then, is, whether he could not prove the facts, lest it should invalidate his own security?

In Great-Britain, this question, is settled, beyond all controversy; and BULLER, J. in the case of *Bent* v. *Baker*, admitted, that what he then considered as the rule could not be extended, except to *negotiable instruments*. This Court, it must be admitted, in *Allen* v. *Holkins*, held a contrary opinion. *Holkins* claimed under a lease, and *Allen* under a deed, from *Mumford*; *Mumford* was offered as a witness, to prove the lease a fraudulent one, and was excluded. The civil law rule was adopted, that a party to an instrument, shall not be admitted, to prove that instrument to have *been originally void*.

But, in this case, it is stated, that at a time *subsequent* to the bill of sale to *Danforth*, the agreement between *Kinne* and *Danforth*, which we wished to prove, was entered into. This admits the bill of sale to be good, to pass the property from *Kinne* to *Danforth*, but goes to show, not that the bill of sale was originally void, or that the debt was destroyed, but merely that it should not operate as against those persons. Nor was the witness offered to prove *any turpitude* in himself, but merely to show, that the transaction between him and *Danforth* was such, that the claim of *Danforth* should be postponed to ours.

Suppose A. conveys to B. and B. to C.—B. sues C.

1804.

WEBB
*v.*
DANFORTH.

for the property ; may not A. be a witness ? Or suppose A. buys a watch of B. and leaves it with him to sell, and he sells it to C. and A. brings trover for it ; may not B. be a witness ? Lord MANSFIELD'S opinion, in *Levi* v. *Essex* (v) seems to decide this. In the case read from *Peake*, the principle for which we contend is expressly recognized. There, the evidence went to prevent the recovery upon the note, not to prove it originally void. Here, the evidence was to show, that the bill of sale should have no effect in this case, not that it was originally void.

The judgment was reversed.

BY THE COURT. It appears by the bill of exceptions, that the defendants claimed, that *Danforth*, the vendee of the vessel, at a time subsequent to his purchase, constituted *Kinne & Park*, the vendors, from whom he derived his title, his agents, or factors, to sell and dispose of the vessel, and left the same in their possession, for that purpose. Such was the agreement, which the defendants claim was entered into. Proof that such agreement was made, or that such *authority* was *given*, and *executed*, though derived from the original vendor, does not impugn the title derived from the vendor. It only shews, that the title so derived has *been divested*, by his subsequent consent, through the medium of his agent, or factor. The facts disclosed exhibit the witness as acting, in the first instance, in his own behalf, as the owner and seller of an article, and transferring a right or title to his purchaser ; and, afterwards, as acting, by the subsequent appointment of the purchaser, as his agent, authorized to transfer the same article, and, by virtue of

(v) *Esp. Dig.* 703. *Dub. Ed.*

his agency, to divest the title originally derived from him. It is a known rule, that an agent or attorney may be sworn as a witness, to testify either for, or against, his principal. The testimony required was of this species. Nor is the rule varied, from the circumstance, that the witness offered has conveyed the article in question to one of the parties. Neither the agreement alleged, nor the acts claimed to have been done, by *Kinne & Park*, in pursuance of the agreement, went to invalidate the title derived from them. The objection to *Kinne* as a witness should not, therefore, have been allowed. It is on this ground, that the judgment of the Superior Court is reversed.

The second point (*w*) may have been urged on the issue to the jury. It does not, however, appear by the record, to have come under the consideration of the Superior Court. It is a general rule, that one tenant in common cannot maintain trover against his co-tenant. It is, however, contended, that there are exceptions to this rule. This question does not appear to have received the decision of the Superior Court, to which this cause is remanded for further proceedings ; and it is, of course, needless, that this Court express any opinion on that point.

(*w*) This was the first point made in the argument.