### ABRAHAM SANBORN *v.* CALVIN MORRILL.

A sale of a personal chattel, by one tenant in common, is not such a de-
struction of the chattel, as to enable the other tenant in common to main-
tain an action of trover against the purchaser.

THIS was an action of trover, in which the plaintiff claimed
to recover the undivided half of four hundred pine mill logs.
Plea, general issue, and trial by jury.

On the trial the plaintiff offered to prove that he was ten-
ant in common of the logs sued for, with one Isaac M. San-
born ; that said Isaac M., by an instrument in writing,
pledged his interest in the logs to the defendant, to secure a
debt he owed him ; that the defendant, without the knowl-
edge or consent of the plaintiff, took the logs from where
they were lying on the bank of a river, and floated them
some miles to a saw-mill, and had them sawed into boards,
and sold the boards, and took the pay for them, and refused
to account, in any way, with plaintiff for the avails of the
sale, and denied the plaintiff's right in the logs.   This testi-
mony was objected to by the defendant, as not being suffi-
cient to entitle the plaintiff to recover in this action, and the
court so decided, and rejected the evidence ; to which the
plaintiff, after verdict and judgment for the defendant, ex-
cepted.

*N. Baylies*, for plaintiff.

I.  By the writing signed by Isaac M. Sanborn, it appears
that he turned out his undivided half of the mill logs as col-
lateral security.   As no time is mentioned when the *pawn*
was to be redeemed, the said Isaac M. had his whole life to
do it in, unless compelled to do it sooner, either by an order
of a court of chancery, at the instance of the pawnee, to sell
the pawn to raise money to pay the debt, or by the power of
the pawnee to sell the property, after demanding payment

and giving reasonable notice that, upon non-payment, he should sell. But no such proceeding was had by the pawnee before the logs were sawed and the boards sold. This was a *tortious* act of Morrill — a conversion of the logs to his own use. For this act the pawnor may maintain *trover.* 2 Kent's Com. 452; 1 Swift, 332; Story on Bailment, sections 303, 8, 9, 10, 348, 9, 350, 2; 2 Caine's Cas. in Error, 200; 10 J. R. 471; 12 J. R. 146; 3 Peters, 256.

II. There is a plain distinction between a mortgage, and a pawn, of a chattel. If it be mortgaged, the general property passes to the mortgagee subject to the condition. But if pawned, the general property remains in the pawnor, and the pawnee acquires only a special property, which gives him no right to transfer the general property, except in one of the two ways above stated. Morrill, without complying with either of these ways, sawed *all* the logs into boards, and sold the boards, and received the pay for them, and refuses to render any account to the plaintiff for his undivided half which were not pawned, and in which Morrill never had any special property. If Isaac M. Sanborn had a right to maintain trover for the conversion of his undivided half by Morrill, then the plaintiff has a right to maintain trover for his undivided half, which were not put in pledge, but have been converted by Morrill to his own use.

III. But we go further, and say, that Isaac M. Sanborn, by placing his undivided half of the logs in the hands of the defendant, as *collateral security*, did not vest in the defendant any property in them, which made him a joint owner with the plaintiff; for, after pawning the undivided half, the general property in that half remained in Isaac M. Sanborn, and he and the plaintiff were still the joint owners of the logs. The defendant acquired only a *lien* upon the said Isaac's undivided half, but no ownership. It cannot, therefore, be said that this action of trover is between joint owners; but it is between a joint owner and one who, without right, converted the logs to his own use.

IV. It is not pretended that the defendant destroyed the logs; but he put them and their avails as much beyond the reach of the plaintiff as he would have done if he had burnt them. In the case of *Wilson & Gibbs* v. *Reed,* 3 J. R. 175, Spencer, J., says, "that an action of *trover* will lie by one

tenant in common against another, for a destruction of the chattel, or for its loss, whilst under his management, has not been controverted ; but a distinction has been attempted between a sale of the chattel and a *tortious* destruction — a distinction, I think, not maintainable.    Tenants in common of a chattel have, each, an equal right to the possession, and the law will not afford an action to the one dispossessed, because his right is not superior to that of the possessor."    If there be two tenants in common owning equal shares in a vessel, and one tenant, without the consent of the other, tortiously applies a fire-brand to the vessel, and burns it to ashes, it would be *destruction* of the vessel ; or, if, for his own use, and benefit, without the knowledge or consent of the other tenant, he tortiously send the vessel to sea, and it be lost — in either of these cases, it is admitted he would be liable to pay his co-tenant for his undivided half ; but if he *tortiously* send the vessel ten thousand miles across the ocean, and sell it in a foreign port, without the consent of his co-tenant, and comes home, and makes known what he has done, would he not be liable to pay his co-tenant for his undivided share ?    This question seems to be answered in the decision of the case, *Tubbs* v. *Richardson*, 6 Vt. R. 442, which was an action of *trover*, for an undivided half of sixty-eight pounds of wool, of which the plaintiff and defendant were tenants in common ; in which it appeared that the defendant had sold twenty-eight pounds of the wool, and had the other forty pounds in his possession.    The judge, on giving the opinion of the court, takes up the decided cases, and says, " The weight of authorities now is, that the sale of the whole chattel owned in common, by one tenant, is a conversion."    " But no intimation has been thrown out, by any judge or elementary writer, that the sale of less than the whole is such conversion."    " There was no sale save twenty-eight pounds, which was less than half; and all the cases of sale go expressly on the ground of the sale of the whole."    " The defendant has not, therefore, in law, been guilty of the conversion of the property in question."    See 5 Barn. & Ald. 395 ; 3 Stark. Ev. 1495.

*Upham & Hibbard*, for defendant.

We maintain, first, that an action of trover cannot be main-

tained by one tenant in common against his co-tenant, unless the property be *destroyed* by the defendant; and, secondly, that the sale of the whole property by one co-tenant, is not such a destruction of it as will enable the other to sustain trover. *Tubbs* v. *Richardson,* 6 Vt. R. 442; 12 do. 681; *Danforth* v. *Webb,* 1 Day's R. 301; *Oviatt* v. *Sage,* 7 Con. 95; *Heath* v. *Hubbard,* 4 East, 110; *Jackson* v. *Anderson,* 4 Taunt. 24, 30; *Muddock* v. *Goddard,* 15 Maine R. 218; *Cubit* v. *Porter,* 15 C. L. R. 211; *Fellows* v. *Ld.Granville,* 1 Taunt. 241; *Wilbraham* v. *Snow,* 2 Saund. 47, n. g.; 1 Coke Litt. 200–6, 908–9; 1 Swift's Dig. 170–1; *Mersereau* v. *Norton,* 15 Johns. R. 179; *Herrin* v. *Eaton,* 13 Maine, 193; *Seldon* v *Hickock,* 2 Caine's R. 1 Salk. 289; 2 Cowp. 140; 1 Term. R. 658.

Again, the logs were designed for the mill, and the defendant had a right to cut them into boards or plank, and sell them. It is well settled, we apprehend, that the conversion of a chattel by a tenant in common to its general and profitable application, though it changes the form of the substance, is not such a *destruction* of it, as will enable his cotenant to sustain trover for it. It is well laid down, we think, in *Martin* v. *Knoullys,* 8 T. R. 145, that a tenant in common may make any fair profit of the common chattel. What profit could be made of the logs in question, if they could not be cut into boards and sold? None, most certainly. The authorities to which we have referred, show that the plaintiff has another remedy in this case.

We are aware that the case of *Weld* v. *Oliver,* 21 Pick. R. 559, is opposed to the doctrine for which we contend. But that case, we think, was not decided upon common law principles. The judge who delivered the opinion seemed to think the common law doctrine, that a sale in such cases is not a conversion, much weakened by the case of *Barton* v. *Williams,* 5 Barn. & Ald. 395; but that case presented other questions, and, in the final disposition of it, the question arising in this case was not settled.

In the case of *Wilson & Gibbs* v. *Reed,* 3 Johns. R. 175, the question was decided against us; but no adjudged case, the court will perceive, was cited to sustain the doctrine adopted by the court.

The opinion of the court was delivered by

HEBARD J. — For the purpose of considering this question, the facts offered to be proved by the plaintiff, and excluded by the court, must be considered as true. The defendant, then, stood in the same relationship to this property that Isaac M. Sanborn did, so far as the plaintiff's interest in the property comes in question. And the plaintiff and the defendant became tenants in common of the property ; for when Isaac M., transfered to the defendant his interest in the logs, the latter stood in the place of Isaac M. ; and if he transcended the power and right conferred upon him by Isaac M., still that would not necessarily affect the legal rights of the plaintiff.

It seems to be conceded by the counsel, and so are the authorities, that one tenant in common, of personal property, may maintain trover against his co-tenant, for a destruction of the property. So that the question to be determined, in the present case is, whether a sale of the chattel, for this purpose, is equivalent to its destruction.

The question upon which the case is to be determined, belongs to the class of *technicalities ;* for if the facts exist which the plaintiff offered to prove, there is no doubt that the plaintiff is entitled to some sort of remedy ; and the question is, in relation to the *form* of the action. In other words, the question is, whether the remedy shall be by action, *ex delicto*, or *ex contractu*. And upon this point, the authorities, to some extent, are conflicting ; and the case, like many others, must be settled by the weight and current of authorities. If the question was entirely *res integra*, it could not be regarded as very important, which way it should now be settled ; but the doctrine of *stare decisis*, even in matters of *form*, and *technicalities*, is not to be disregarded.

In determining this question, one or two points here are worthy of consideration, before proceeding further. We have already remarked, that this action may be maintained for a destruction of the property, by one tenant in common, against his co-tenant ; and those authorities which sustain the action, do so upon the notion that a *sale* is equivalent to *destruction*. I think there is a difficulty in sustaining the action upon this ground. If the defendant had no right to sell this property, then his attempting to do so, did not divest

the plaintiff of his interest in it ; and while the plaintiff had <span style="float:right">CALEDONIA,</span>
an interest in the property, so that he could pursue it, I <span style="float:right"><i>March,</i><br>1843.</span>
cannot see how it can be said that the property was destroyed. <span style="float:right">Sanborn</span>
There can be no destruction of the property arising from the <span style="float:right"><i>v.</i><br>Morrill.</span>
sale, only upon the supposition that the defendant was
authorised to sell it ; or, having sold it, that the plaintiff has
ratified the sale ; and, in either of these cases, it would not
be pretended that the plaintiff could maintain trover ; but the
action should be in form, *ex contractu.*

Another reason exists in this state, that does not in some
other states, why the action should not be sustained upon
doubtful authority ; and that is, the distinction which our
statute has made between actions founded on contract, and
those founded on tort, the body being free from arrest in one
case, and not in the other.

There have been a variety of decisions, bearing upon this
case. The plaintiff relies upon *Wilson & Gibbs v. Reed,* 3
Johns. 175. In that case, Judge Spencer says, that "for a sale
of a chattel, an action of trover will lie, by one tenant in
common against another." The question, however, is very
little discussed by the Judge in giving this opinion ; but he
is merely understood to affirm the opinion and charge of
Judge Kent in the circuit court, who there says that " the
presumption is that the rum had been retailed by the defend-
ant, which in law, was a destruction " ; and whether the
nature and kind of property, had anything to do with the
propriety of sustaining the action, in the minds of either
court, does not appear ; but it seems to have been sustained
upon the principle, that the *sale* was a *destruction* of the
chattel. The case of *Weld v. Oliver,* 21 Pick. 559, is also a
prominent authority relied upon by the plaintiff, and there is
no doubt but it goes as far, at least, as the case under con-
sideration. But there will be some difficulty in following out
that case. The case goes upon the ground, that there must
be a destruction of the property ; and still Judge Dewey
goes on to show that the property, in that case, still had a
legal existence. He says that " the unlawful sale by the
first vendor, of the property, does not necessarily impair the
rights of the other co-tenant, or pass any title, unless he
ratify the sale. " It would be difficult to understand how, in
a legal sense, there can be a destruction of the plaintiff's prop-

erty by a sale, which does not even "impair his right or pass any estate." And he goes on to say, "that you may proceed by action, either against the first or any subsequent vendor."

The two cases above cited, if followed, would, without doubt, be authority to sustain the present action. But it is believed that the weight of authority is the other way; and such authority, too, as we are not at liberty to disregard.

The English authorities, though not as decisive and not as much to the point as might be desirable, if they alone were to be relied on, go very far to sustain the doctrine, that for a *sale* by a tenant in common, his co-tenant cannot maintain trover, but that there must be a *destruction* of the property. The case of *Oviatt* v. *Sage,* 7 Con. 95, holds the converse of the doctrine which is attempted to be established by the two cases before cited. In that case, *Oviatt* and *Cobb* were tenants in common of a quantity of cheese, and *Cobb* sold the cheese to Sage, and Sage disposed of the cheese in market, and refused to account with Oviatt, who sued him in an action of account, and the objection taken, was that it should not have been *account* but *trover,* the sale being a destruction of the property. But the court, (Judge Daggett,) denies that doctrine, and says that nothing short of a destruction of the property will make a co-tenant liable in trover; and, in short, that a *sale* is not equivalent to a *destruction* of the property. In the case of *Oviatt* v. *Sage,* the court seem to put some stress upon the fact, that the property, in that case, being cheese, was intended for market, and that the sale of the article was in accordance with its original destination. I apprehend that consideration is not altogether unimportant; and if important in that case, it is equally so in the present. These pine logs were useful to the owners, only as an article of traffic and sale. The case of *Webb* v. *Danforth,* 1 Day, 301, is to the same import; and also Swift's Dig. 170. All go upon the ground that the sale of the chattel makes the purchaser co-tenant with the other owner, and does not pass his title to the property. And such is the reasoning of Judge Dewey, in the case of *Weld* v. *Oliver.*

When one tenant in common makes sale of the whole chattel, the other tenant has his election, either to disaffirm the sale, and stand as co-tenant with the purchaser, or to affirm the sale, and call the seller to his accounting for the

proceeds. And when he ratifies the sale, it ceases, of course, to be a tortious act.

But there is another view of this case, aside from the authorities to which I have referred. We are disposed to regard this as not an open question. The case of *Tubbs* v. *Richardson*, 6 Vt. R. 442, has settled the law in this state; and, to sustain the present action, would overturn the whole doctrine of that case. There is but one feature in that case to distinguish it from the present, and that is not of the essence of the question. In that case, the whole of the property thus owned in common, was not sold. But that cannot alter the principle. It was not upon that principle that the action in 21 Pickering, was sustained, for, in that case, the whole of the salt was not sold. The only reason for such a distinction is, that if less than half is sold, it may be considered as working a severance of so much of the property, if it is a commodity susceptible of being severed. But that argument is answered by saying, that the authorities agree that one tenant in common cannot compel a severance.

In the case of these logs, there was no tortious taking, for one tenant in common has as good a right to the possession as the other; and each tenant owned an undivided half of each log, and so it was in the case of the wool. The right of action, then, could not be made to depend upon the fact, whether the whole, or only a part, of the property was sold. If selling the whole would be unauthorized and tortious, so equally, in principle, would be the selling a part. When this distinction is disposed of, the two cases are parallel. And this is a *distinction* without a *difference*. And even if it might be said that a different determination of that case should have been made, that will avail us nothing, unless we now come to the determination to overrule that case. But the case of *Isaacs* v. *Clark*, 12 Vt. 681, shows that the court had no disposition to disturb the doctrine settled in the case of *Tubbs* v. *Richardson*. And although, as is said, the reasoning of Judge Bennett in that case was not called for by the question to be decided, it shows that the court were disposed to adhere to the doctrine. As we have already said, we consider the law upon this point settled by the case of *Tubbs* v. *Richardson*; and if the doctrine of *stare decisis* is worth preserving, the conclusion, in the present case would seem to be inevitable. Judgment of the county court affirmed.