WESLEY GOODRICH *v.* A. B. CHAPPELL AND P. H. PHANEUF.

February Term, 1916.

Present:   MUNSON, C. J., WATSON, HASELTON, POWERS, AND TAYLOR, JJ.

Opinion filed May 6, 1916.

*Attachment—Sale Before Final Judgment—Procedure—Liability of Officer and Plaintiff—Trespass and Trover—Possession of Property—Tenancy in Common.*

By specific provision of P. S. 1789, sale of attached personal property after return of process is governed by P. S. 1784-1785, providing for the sale of attached perishable property.

Under P. S. 1789, 1784-1785, prescribing the procedure for the sale of attached personal property, the appraisers are required to determine whether the property is such, or is so conditioned, as to be the subject of sale under the statute, and the officer cannot legally sell the property until such determination and subsequent appraisal.

Where an officer attached personal property by lodging in the town clerk's office a copy of the writ with his return thereon, but never took actual possession of the property, which remained in the possession of the debtor or of his co-tenant, who was also the attaching creditor, and to whom the officer wrongfully sold the property after return of process and before final judgment, in attempted compliance with P. S. 1789, but receiving nothing therefor, the officer was not liable to the debtor in trespass, for he did not take nor injure the property, nor in trover, since there was no conversion.

As the attaching creditor, before and at the time of the sale, was in possession of the attached personalty as tenant in common with the debtor, his possession after the sale was no different, and so the fact that after the sale he claimed to be the absolute owner did not constitute a conversion of his co-tenant's interest, nor did the former's subsequent sale of part of the property make him liable to the latter in trover.

TRESPASS and trover against A. B. Chappell (who was the plaintiff in an action brought before a justice of the peace, writ

dated September 28, 1914, against the plaintiff herein) and P. H. Phaneuf, a deputy sheriff who served the writ in the case before the justice of the peace. The defendants severally pleaded the general issue with notice. Trial by court at the September Term, 1915, Franklin County, *Butler*, J., presiding. Judgment for the defendants. The plaintiff excepted.

On November 5, 1914, judgment was rendered in the case in the justice court and, on appeal therefrom, the case came to the county court where, at the March Term, 1915, judgment was rendered for the plaintiff therein to recover $79.91 damages and $22.82 costs.

In the case at bar, the plaintiff seeks to recover the value of his undivided one-half interest in seven pigs, three calves, sixteen fowls, sixteen ducks, and seven turkeys; which undivided one-half interest was attached by Phaneuf, as deputy sheriff, on the writ in *Chappell* v. *Goodrich*, by lodging a copy thereof in the town clerk's office. After the process in that case had been entered in court and before final judgment, upon request of the plaintiff therein, the said undivided one-half interest in this property, so attached, was sold on the writ, at public auction, by defendant Phaneuf, under the provisions of P. S. 1789-1790, for $67.00. The sale was on December 8, 1914, and the officer made return of his doings and sale, under date of January 5, 1915, and filed the same with the clerk of the county court on 11th of that month.

The other undivided half of this property was owned by defendant Chappell. At the time Goodrich's interest was attached, the property was on the farm owned by Chappell, but then in possession of and being occupied by Goodrich, under a lease. Chappell moved onto the farm October 20, 1914, and possession was delivered to him and Goodrich moved off the first day of November following, at the expiration of the lease. When Goodrich moved off, the personal property in question was left on the farm, and it has ever since remained there in the possession of Chappell, except that the latter sold the ducks and turkeys after the aforementioned sale by the officer. At the sale last mentioned, Goodrich's interest in all this property was purchased by Chappell, (through his agent,) except that his interest in the sixteen fowls was purchased by Goodrich's attorney who never took possession of or paid for the same. Chappell never

in fact paid to the officer anything on the purchase price for the property bid off by him at the sale.

*Gaylord F. Ladd* and *Henry F. Rustedt* for the plaintiff.

*McFeeters & McFeeters* for the defendants.

WATSON, J.   It is contended by the plaintiff that there were such irregularities connected with the sale of the property on the writ by defendant Phaneuf as rendered the sale void.   Section 1789 of the Public Statutes provides that personal property attached on mesne process, may be sold or disposed of, after the process has been entered in court and before final judgment, upon the same requests, and in the same manner as provided for the sale or disposal of property so attached, before the process is entered in court.   To the extent, therefore, of the requests upon which the officer must act, and his manner of procedure in effecting such sale, the law of sections 1784-1785 applies.

The request was made to the attaching officer by Chappell, the plaintiff in the suit in which the property was attached. But it is said that the notice thereof given by the officer to Goodrich, the defendant in the suit, was fatally defective because it did not assign a legal reason for the proceeding; that the statutory reason is a request by one of the parties to have the property sold, while the reason assigned in the notice was to the effect that the officer proposes to sell the property because the creditor refuses to have it sold.   We pass over this and other points of claimed irregularities, considering only one of the questions presented.

By section 1784, "When an attachment is made of live animals, or of goods or chattels which are liable to perish or waste, or to be greatly reduced in value by keeping, or which can not be kept without great or disproportionate expense, and the parties do not agree to the sale thereof, the property so attached shall, upon request of either of the parties interested therein, be examined, appraised and sold, or otherwise disposed of, in the manner following: * * * *" After providing for notice to the other parties, the law of the section requires the attaching officer to prepare a schedule of the property, and appoint three disinterested persons acquainted with its value as appraisers, to be sworn by him; "and, if such appraisers are satisfied that the de-

fendant in the action has been informed of the attachment of
the property, they shall appraise the same as provided by law.''
By section 1785, ''The appraisers shall examine the attached
property; and, if the same or a part thereof is liable to perish or
waste, or to be greatly reduced in value by keeping, or cannot be
kept without great and disproportionate expense, they shall ap-
praise the same at its value in money. Such property shall
thereupon be sold by the officer, * * * unless the property is
taken by the defendant, as hereinafter provided.'' By section
1787, provision is made whereby the property shall be delivered
to the defendant, upon his depositing with the attaching officer
the appraised value thereof in money, or giving to him satis-
factory security for payment of such value, etc.

From the above provisions of the statute, it is seen that
neither the party who requests that the attached property be
sold, nor the attaching officer, is to determine whether the prop-
erty is liable to perish or waste, or to be greatly reduced in value
by keeping, or can not be kept without great and disproportion-
ate expense. This question is to be decided by the appraisers
upon examination. It they decide that the property is such, or is
so conditioned, as to be the subject of sale under the statute,
they shall appraise it; and it is only when they so decide
and make appraisal, that the officer is authorized to sell the
property. *Crocker* v. *Baker,* 18 Pick. 407; *Kennedy* v. *Pike,* 43
Me. 423. The record states that the only question considered by
the appraisers and the only finding made by them was the value
of the property. This shows that the aforementioned question
to be decided by them was not even considered, and no finding
was made concerning it. In order for proceedings of this kind
to be justified in the particular instance, they must be shown to
have been conformable to the provisions of the specific statutory
law authorizing them. *Walker* v. *Wilmarth,* 37 Vt. 289. In
the case cited this Court said, ''The owner of property, which is
subject to the proceeding, is affected in his rights, only by force
of the law authorizing the proceeding, and he may assert and
stand upon those rights, unless it be shown that the law has super-
vened upon them in the mode, and by the instrumentalities there-
in prescribed.'' We hold, therefore, that there was an unquali-
fied noncompliance with the statute in a respect essential to any
authority in the officer to sell the attached property, (in the
absence of consent of the parties,) and that by reason thereof

the sale in question was void. *Fitzpatrick* v. *Peabody,* 51 Vt. 195. No right or title in or to the property or any part thereof, passed to the purchasers under that sale.

The attachment was made by lodging a copy of the writ, with the officer's return, in the town clerk's office. The property attached was then in Goodrich's possession, on the farm where he lived. The attaching officer never took it, or any part of it, into his possession, nor did he ever move it or any part of it; and he never received anything in payment for the undivided interest therein sold by him as before stated. On the facts found, the officer, defendant Phaneuf, is not liable in trespass, for he did not take or injure the property (1 Chit. Pl. *162) ; nor in trover, for nothing he did was a conversion of it. *Irish* v. *Cloyes,* 8 Vt. 30, 30 Am. Dec. 446; *Clark* v. *Smith,* 52 Vt. 529; *Spaulding* v. *Orcutt,* 56 Vt. 218; *Thorp* v. *Robbins,* 68 Vt. 53, 33 Atl. 896.

For some time before, and at the time of, the sale, defendant Chappell was in possession of the property as tenant in common. His possession after the sale was not different. *Bates* v. *Marsh,* 33 Vt. 122. The fact that he then claimed to be the absolute owner of the plaintiff's previous interest, and that the property was no longer owned by them in common, did not change the situation, nor did it constitute a conversion by him of the plaintiff's undivided interest. *Irish* v. *Cloyes,* and *Thorp* v. *Robbins,* both cited above. Nor did the subsequent sale of the ducks and turkeys by Chappell make him liable to his cotenant in an action of trover. *Sanborn* v. *Morrill,* 15 Vt. 700, 40 Am. Dec. 701; *Barton* v. *Burton,* 27 Vt. 93; *Lewis* v. *Clark,* 59 Vt. 363, 8 Atl. 158; *Olin* v. *Martell,* 83 Vt. 130, 74 Atl. 1060, 138 Am. St. Rep. 1072.

What effect, if any, the attempted sale of the attached property, by the officer, had upon the attachment lien, as to him or the attaching creditor, is a question not material here.

*Judgment affirmed.*