James H. Welch *v.* Edmund Clark.

If A. and B. are tenants in common of a horse, and, while in the posses-
sion of B., it is attached by the creditors of B. as his sole property, and
while in the keeping of the agent of the officer who served the writ, it
is again attached by the same officer at the suit of C., who is also a credi-
tor of B., by the express direction of C., A. is not thereby enabled to
maintain trespass against C.

If, in such case, the horse is sold on the executions issued on judgments ob-
tained in favor of the creditors of B., who first attached, and not on the
execution in favor of C., though there be a surplus remaining in the
hands of the officer after the satisfaction of the first execution, and
that surplus be applied by the officer in part satisfaction of the execution
of C., yet this can have no effect in an action of trespass against C.

If the consideration, paid for a chattel, move from A. and B., it is evidence,
in the absence of proof of any agreement or evident understanding to
the contrary, to vest the ownership of the chattel in those from whom
the consideration moved.

Trespass for taking a mare. Plea, not guilty and trial by
jury.

Upon the trial in the county court, the plaintiff introduced
evidence tending to prove, that, at Barnston in Lower
Canada, in March, 1836, he lent the mare in question to
William C. Clark, to drive with another horse to Burlington,
in Vermont ; that said William C. having stopped for a
few days at the inn of one Wheelock in Eden, said horses
were there attached, by the constable of Eden, at the several
suits, of one Lease, one Merriam, and the defendant, as the
property of said William C. ; that the defendant's attachment
was several hours subsequent to the others, and while
said horses were in the keeping of said Wheelock, as bailee
of the constable, but attended by an actual turning out of the
property by the defendant, at the request of said officer ; that
said attachments were all followed up to judgments and ex-
ecutions against said William C., which executions wer e
delivered to said constable, who sold the mare in ques-
tion upon one or both the other executions, and not upon the
defendant's, but, after having satisfied said other executions
out of the avails of said sale, the constable applied the over-
plus (some six or eight dollars) upon the defendant's execu-
tion, and sold the other horse thereon.

In order to show himself the owner of said mare, the plain-
tiff introduced testimony tending to prove, that, in the season

LAMOILLE,
August,
1839.

Welch
v.
Clark.

of 1835, he purchased of one Wright a young horse, which he afterwards, on the 5th day of December, 1835, exchanged with one Burbank for the mare in question, giving his note for twelve dollars and fifty cents for the difference between said horses, and that he kept and used said young horse and mare, as owner thereof, claiming to be such.

The defendant introduced evidence tending to prove, that, during all the time aforesaid, the plaintiff and said William C. were partners in business, including the business in which said horses were mostly used ; that they jointly purchased the young horse of said Wright, and that said William C. received the horse of said Wright and executed a note in payment therefor in the names of himself and the plaintiff, and that said William C. had been once or twice at Eden with said mare in the business aforesaid previous to the journey to Burlington, and subsequently to said purchase from Burbank.

The plaintiff then gave evidence tending to prove that there had been no partnership or connection in business between himself and said Wm. C. ; that he (the plaintiff) alone and in his individual right, purchased the young horse of Wright, and that the execution of a note in payment thereof by said William C. was unauthorized by the plaintiff.

Upon this evidence the plaintiff requested the court to charge the jury ;—that, although they should find that the plaintiff and said William C. were tenants in common of the property, yet, if the defendant had converted the whole to his use, by procuring a sale thereof at vendue, or otherwise, the plaintiff was entitled to recover damages, proportioned to his interest in said property, and although they should find that the plaintiff and said William C. owned the young horse in common, yet, if they should also find that said William C. had full knowledge that the exchange with Burbank was made by the plaintiff wholly in his own name, and by giving his individual note for the difference, the mare in question thereby became the sole property of the plaintiff.

But the court, among other things, instructed the jury, in substance, that the turning question in the case must be, whether the plaintiff was the sole owner of the mare, or he and William C. were joint owners, or owners in common ? That if they should find that the plaintiff and said

William C. were joint owners of the young horse, it ought to be inferred (in the absence of any contract or evident understanding shown to the contrary) that said William C. had also an interest in the mare in question, since his interest in the young horse had gone in part payment therefor, and if they should find that said William C. was a part owner of the mare in question, at the time of the taking by defendant, the plaintiff could not recover at all in this action.

The jury returned a verdict for the defendant and the plaintiff excepted to the charge of the court.

*J. Sawyer*, argued for the plaintiff, and cited New York Digest, 396, 397, 323, 382. 5 Vt. R. 161, 164. 5 Cowen's R. 523. 2 Sel. N. P. 1277, 1279. 4 East's R. 121. 6 Vt. R. 442. 1 Taunt. 241. 7 Conn. R. 95. Swift's Dig. 170. New York Dig. 382.

*Willard & Poland and Maeck & Smalley*, for defendant.

The court instructed the jury that if plaintiff and Wm. C. Clark were joint owners of the mare, the action of trespass could not be maintained in this case, and this charge we hold to be correct.

I. The cases of *Read & Root* v. *Shepardson*, 2 Vt. R. 120, and *Whitney* v. *Ladd*, 10 Vt. R. 165, show not only that the officer may, but that he must, take the property exclusively into his possession.

The only question, then, is, whether the subsequent conduct of the officer has subjected this defendant to an action of trespass. We have already seen the officer must take and exclusively keep possession and must sell the property and deliver possession to the purchaser. Did his acts make this defendant a trespasser? The ground to make him a trespasser is that the officer sold more than the debtor's interest in the property, and the defendant, by receiving a portion of the avails of the sale, has participated in the trespass. But this ground is insufficient. To entitle the owner to maintain trespass, he must have either the actual possession of the property injured, or constructive possession. And though he be the general owner, yet, if he had not the right of immediate possession, he cannot maintain trespass. *Putnam* v. *Wyley*, 8 Johns. R. 435. 1 Chit. Pl. 153, and cases cited. We have already seen, from the cases cited from 2 & 10 Vt. R., that the officer was entitled to exclusive possession, and they

*Margin note:* LAMOILLE, August, 1839.

Welch v. Clark.

further show that the plaintiff would have been a trespasser if he had divested him of the property.

II. The right of the plaintiff to sue the officer for an injury done to the common property, can be no greater than as against his co-tenant. The rule, as between tenants in common, is, that, to entitle one tenant in common to maintain an action against the other; the latter must actually destroy the chattel. But, in England, and in some of the American states, it has been held that a sale of the chattel does not amount to a destruction of it. *Heath* v. *Hubbard,* 4 East, 128. *Oviatt* v. *Sage,* 7 Conn. 95.

In New York, it has been held that a sale amounts, constructively, to a destruction, but no case in their reports, nor in any other reports, shows that trespass would lie, and it was not held, until quite modern times, that trover could be maintained.

This case further shows that the plaintiff had been entirely divested of his property by the two previous attachments, before the defendant attached, and that the property was sold on those previous attachments. The defendant, then, cannot be sued by the plaintiff in trespass. If the plaintiff can maintain any action, it is trover against the officer, or for money had and received, or an action on the case for an injury done to his reversionary interest, and not an action of trespass.

The opinion of the court was delivered by

BENNETT J.—Can this action be sustained upon the facts disclosed in this bill of exceptions? We think not. The court, in substance, charged the jury that if they found that the plaintiff and William C. Clark were tenants in common of the mare in question, the plaintiff could not recover. The general rule is, that one tenant in common cannot maintain trespass or trover against his co-tenant, because they have each an equal right to the possession of the chattel, and the law gives no action to the one dispossessed, because his right is not superior to the right of the other.

It is, however, equally well established, that, if there has been a destruction of the chattel by one co-tenant, the other, in such case, may maintain the action ; and it has been held that the sale of an entire chattel, held in common, by one of

the co-tenants, without the consent of the other, is equivalent to a destruction. This, however, cannot be regarded as settled law. In the case of *Heath* v. *Hubbard*, 4 East's R. 128, the court intimate a different opinion, while in the case of *Barton* v. *Williams*, 5 B. & A. 395, great doubt is entertained whether the effect of such sale would not amount to a conversion, and some of the court think it would. In the case of *Daniels* v. *Daniels*, 7 Mass. R. 137, Chief Justice Parsons says, trover will not lie by one or more of the heirs against the other heirs for the conversion of their title deeds, unless they are *absolutely destroyed*. In *Okiatt* v.
Sage, 7 Conn. R. 95, there had been a sale by one co-tenant of the entire chattel, and judge Daggett says " that nothing done by one tenant in common of a chattel, short of a destruction of it, will render. him liable to his co-tenant in tort, and that this is familiar law." In the state of New York, in the case of *Wilson & Gibbs* v. *Reed*, 3 Johns. R. 175, it was expressly adjudged that if one tenant in common of a chattel sell it, an action of trover will lie against him by the other co-tenant. This case is not supported by any adjudged case, cited either by the counsel or by the court, though it has been regarded as settling the law in that state. In the case of *Tubbs* v. *Richardson*, 6 Vt. R. 442, where the parties were tenants in common of a quantity of wool in the possession of the defendant, and he had sold a part of it and retained the rest, claiming the whole as his own, and refused to deliver any portion of it to the plaintiff on demand, it was held that trover would not lie, even for a moiety of what had been sold.

I am not aware of any adjudged case in this state, that trover could be sustained upon a sale of the entire chattel held in common, and perhaps there may be some reason to question the soundness of the doctrine in the state of New York on this subject. If one of two tenants in common take the whole chattel into his possession, the other has no remedy against him who has done the wrong, but to take it himself out of his possession when an opportunity presents. And, if one tenant in common sells the whole chattel without the consent of the other tenant, the purchaser acquires a right to the *possession* of the whole chattel, as tenant in common,

the possession of one being the possession of both, but a *title* to one moiety only.

The tenant is not divested of any right by the sale of his co-tenant, but becomes a tenant in common with his purchaser, who succeeds to all the rights of a tenant in common. How, then, is such a sale equivalent to a destruction of the chattel? No doubt, the tenant may, at his election, affirm the sale, and sustain his action against his co-tenant for a moiety of the consideration received. But, if he brings his action for the tort, this is not an affirmance of the sale, though, probably, a *recovery and satisfaction* in trover against the co-tenant, might have the effect to vest the entire chattel in the purchaser. It is not necessary, however, in this case, for the court to decide upon the effect of a sale of a chattel by a co-tenant, and, whether, if upon such sale trover will lie, there should be a distinction between trover and trespass.

This mare, while in the possession of Wm. C. Clark, had been attached on two several writs, and was, at the time of the attachment by the defendant, in the custody of the law. The defendant's writ was served by the same officer, which would have the effect to give him a lien, subject to the two first attachments; but he would have no right in, or control of the property, only as subject to the two first attachments. The mare was sold to satisfy the two first liens; but there were no proceedings, in regard to the sale of the mare, on the defendant's execution. The defendant, in this case, as the creditor of Wm. C. Clark, as it respects the plaintiff, relies upon his rights and stands in his place. The defendant had the right to attach, at least, all the interest Wm. C. Clark had in the mare, as tenant in common with the plaintiff, and the officer had, by virtue of such attachment, the right to take the entire and exclusive possession of the mare, subject only to the prior attachments, to the dispossession of the plaintiff. *Reed & Root* v. *Shepardson*, 2 Vt. R. 120. *Whitney* v. *Ladd*, 10 Vt. R. 165. In *Heydon* v. *Heydon*, 1 Salk. R. 392, it was held that the sheriff, in the case of co-partners and judgment against one, in levying the execution upon the goods of the partnership, must seize all, because the moieties are undivided; for, it is said, if he seize but a moiety, and sell that, the other will have a right to a moiety of that moeity;

therefore, he must seize the whole, and sell an undivided moiety, and the vendee will then be a tenant in common with the other partner. The same reason will apply to tenants in common. It is, then, very manifest that the attachment of a chattel, held in common, on a process against one of the tenants in common, as his sole property, cannot in any point of view be considered equivalent to a destruction of the chattel, so as to give the other tenant the right to an action of trespass or trover against the attaching creditor, who succeeds to the rights of one of the tenants, or the officer who made the attachment.

The fact that the officer, after the sale of the mare on the two first executions, applied the surplus of the money, remaining after the satisfaction of those executions, on the defendant's execution, can have no effect in this action. The officer held such surplus in trust for those who were entitled to it, and must, at his peril, make a legal application of it. If the defendant is not entitled to retain it, he might be compelled to refund it, in an action for money had and received, but his reception of it can have no possible effect in this case.

As this is an action of trespass, there is another ground which is fatal to the plaintiff's right of recovery. To sustain trespass, the plaintiff must have either the actual or constructive possession of the chattel, at the time of the trespass complained of. He must have such a right as to be entitled to reduce the goods to actual possession when he pleases.

In this case, the plaintiff's right to the possession of the mare, at the time of the defendant's attachment, was, for the time being, tolled by the prior attachments, the mare then being in the custody of the law, and the plaintiff, not having, at that time, the actual possession nor the right of possession, could not, for this cause, maintain trespass.

The charge of the court to the jury, that if they found the young horse, which was had of Wright, was owned by the plaintiff and William C. Clark jointly or in common, and that this horse was turned out in part payment of the mare in question, they ought to infer (in the absence of any contract or evident understanding shown to the contrary) that they had a common interest in the mare in question, is most certainly unexceptionable. If the consideration paid for the mare in question moved from the plantiff and William

C. Clark, the effect of it, in the absence of any proof to the contrary, would be to vest the property in those who paid the consideration for it, and, indeed, this part of the charge was not resisted in the argument of the case. The result is that the judgment below is affirmed.