THE STATE OF MISSOURI, Respondent, v. WILLIAM HUNNERWARDLE, Appellant.

St. Louis Court of Appeals, April 21, 1891.

1. **Criminal Law:** CRIMINAL TRESPASS. The statute ( R. S. 1889, sec. 3593) does not make criminal an act which does not amount to a trespass at common law.

2. **Landlord and Tenant:** JOINT INTERESTS IN CROPS: TRESPASS. Land was leased, the arrangement being that the tenant should raise on it and harvest a crop of wheat, for which the landlord should furnish the seed, and that the landlord and tenant should share equally in the labor and expense of threshing the wheat, after which it was to be equally divided between them. Owing to expenses incurred in the harvesting of the wheat, the tenant became indebted to the landlord, which indebtedness was to be paid out of the wheat. Thereafter the landlord, to secure his claims and against the opposition of the tenant, removed all of the wheat from the demised land to his own premises and there threshed it. *Held* that the landlord and tenant owned the wheat as tenants in common, and that the conduct of the landlord constituted neither a criminal nor a civil trespass.

*Appeal from the Monroe Circuit Court.*—HON. THOMAS H. BACON, Judge.

REVERSED (*and defendant discharged*).

*Bristow & Lighter*, for appellant.

(1) The court erred in the instructions given for the state. The first instruction assumes that the fact that Hagist had sowed a crop of wheat on defendant's land entitled Hagist to the exclusive possession of the land. The relation of the parties to and the possession of the land ought to have been submitted to the jury under the evidence. *Bush v. Bush*, 89 Mo. 360. The second instruction is clearly erroneous and not warranted by the law in directing a verdict of guilty, if Hagist owned an undivided part, and claimed it to be his property. *State v. Forsythe*, 89 Mo. 667. (2) The court erred in refusing the instructions asked for by defendant. The first instruction submitted the proposition to the jury, whether, under the evidence, the defendant and prosecuting witness were tenants in common or partners in the wheat. It is submitted that the undisputed testimony shows that Hagist and defendant were to share the crop, which made them partners in the wheat. *Rankin v. Fairley*, 29 Mo. App. 587; *Philips v. Samuel*, 76 Mo. 657; *Caswell v. District*, 15 Wend. 379; *Johnson v. Huffman*, 53 Mo. 504. The second instruction prayed for by defendant submitted that, if defendant was half owner of the property, they could not find the defendant guilty under this information, and, under the law, this instruction ought to have been given. *State v. Zinn*, 26 Mo. App. 17.

*J. H. Whitecotton*, for respondent.

(1) Instruction, numbered 1, was proper. It laid down the law in the language of the indictment, and required the jury to find all that the indictment charged. (2) We also submit that the first and second instructions offered by the appellant were properly refused by the court, as there was no evidence proving, or tending

to prove, a tenancy in common or a partnership. *Turner v. Baker*, 42 Mo. 113 ; *State v. Ross*, 29 Mo. 32 ; *Ryan v. Spalding*, 40 Mo. 165 ; *Donnell v. Harsche*, 67 Mo. 170. There was no evidence to support said instructions. *Ewing v. Goss*, 41 Mo. 493 ; *White v. Chaney*, 20 Mo. App. 389 ; 85 Mo. 35. The instructions were calculated to mislead the jury. *Green v. Parker*, 85 Mo. 107.

THOMPSON, J.—This was a criminal information for a trespass and carrying away of personal property, under section 3593 of the Revised Statutes of 1889. This statute is as follows: "Every person who shall wilfully and maliciously or wantonly and without right, enter the premises of another, and cut, take away, destroy, injure or mutilate any fruit tree, ornamental or shade tree, shrub or vine, or who shall take or carry away any fruit, grapes, flowers, vegetables, grain, grass or hay being or growing thereon, or who shall wantonly and without right break or cut down, injure, take or carry away any portion of a fence, hedge or other inclosure, or any material of which the same is formed, belonging to and inclosing lands not his own, or who shall purposely cut down, lap, girdle or otherwise injure or destroy any ornamental or shade tree standing or growing on any common or public ground or any street, alley, sidewalk, promenade or park, or who shall, without the consent of the owner, cut down, destroy or carry away any timber or tree or trees whatsoever, being on land not his own, and not the property of the United States, or who shall, without the consent of the owner thereof, buy or in any way receive any timber, wood or trees that have been upon or taken or carried away from the lands of another as aforesaid, knowing the same to have been so cut down or taken away as aforesaid, or who shall wilfully destroy or injure any goods, wares, merchandise or other personal property of another, shall be deemed guilty of a misdemeanor."

The information is as follows: "J. H. Whitecotton, prosecuting attorney within and for Monroe county, Missouri, informs the court and justice that, at the county of Monroe and state of Missouri, on or about the thirteenth day of July, 1889, William Hunnerwardle, then and there being, wilfully, unlawfully, maliciously and wantonly, and without any legal right whatever, did enter the premises of Casper Hagist, and maliciously and unlawfully and wilfully take and carry away one hundred shocks of wheat, then and there being, and having grown on the said premises of the said Casper Hagist, and then and there being the property of the said Casper Hagist, and without the consent of the said Casper Hagist, the owner of said wheat, or of anyone having in charge and control said wheat, and against the protest and express command and request of the said Casper Hagist, against the peace and dignity of the state."

The evidence adduced at the trial in the circuit court tended to show that, in the year 1887, one Casper Hagist entered into a verbal contract with the defendant, whereby the defendant rented to Hagist twenty-five acres of farming land, with a house thereon, and the use of some wood in an adjoining woodland, for which he was to pay $85 for the year 1888; that, by the arrangement, Hagist was also to make a crop of whea on the land in the year 1889, the defendant furnishing the ground and seed, and Hagist raising and harvesting the crop, and he and Hagist sharing equally in the labor and expense of threshing it, after which it was to be equally divided between them. Difficulties arose between the defendant and Hagist, growing out of the settlement of the accounts of the tenantry for the first year. The defendant caused Hagist to be arrested and prosecuted criminally for stealing wood from his woodland. He also brought an action against Hagist before a justice of the peace, but Hagist pleaded a set-off and recovered a balance against defendant of $1.15. The

defendant took an appeal to the circuit court, and, at the time of the alleged trespass herein, the appeal was pending. The criminal prosecution above spoken of was *nolle prossed* by the prosecuting attorney after an investigation of the facts. The evidence also showed that, when the time came to put in the wheat, Hagist was sick, and that the defendant assisted him with a hand and team, for which Hagist owed the defendant, at the time of the trespass laid in the information, the sum of $9.75, which he was to pay the defendant in wheat when the wheat was threshed. This was outside of the matter, which had been litigated before the justice of the peace in the case which was pending on appeal in the circuit court. The defendant, on the other hand, claimed that Hagist owed him $30.

For the purpose of making sure the collection of this claim, the defendant entered upon the land after the wheat had been harvested and put in shock, and hauled all the wheat away and stacked it upon his own land, and afterwards threshed it, and, it seems, under the verdict of a jury before a justice of the peace accounted to Hagist for his share of it. When the defendant was thus engaged in carrying away the wheat, Hagist appeared on the ground with an axe, seized his horses by the bridle and resisted. The defendant drove Hagist away with a pitchfork. The trespass, if such it was, was thus forcible, not in theory of law merely, but in fact. The only right, which the defendant claimed, to take the wheat was, that Hagist was indebted to him. He testified: "I told him at the time he took the wheat, when he asked me what I took that wheat for, I told him in order to protect myself. I took the wheat, and that if he would settle the claim that I had against him, I would stop hauling that wheat at once. *Q.* It was for the purpose of making him settle? *A.* Yes sir."

Upon this state of evidence the court submitted the case to the jury upon four instructions given of its

own motion, of which the two following are challenged by the defendant. "1. If on the evidence the jury finds that, within one year next before July 26, 1889, at the county of Monroe, in the state of Missouri, the defendant did either wilfully and maliciously, or wantonly and without right, enter the premises of Casper Hagist, and without the consent of said Casper Hagist, and that then and there the defendant did wilfully and maliciously take and carry away one hundred shocks of wheat, or a part thereof, then and there the property of said Casper Hagist, and on said premises then and there being, the jury must find the defendant guilty as charged, and assess his punishment at imprisonment in the county jail not exceeding one year, or a fine not exceeding $500, or by both by such fine and imprisonment.

"2. It is not necessary to show that the alleged acts of taking and carrying away the alleged grain of the prosecuting witness, Casper Hagist, were done by the defendant from personal malice conceived against Casper Hagist. If said alleged grain of said Hagist was taken and carried away from the premises of said Hagist by the defendant wrongfully, intentionally and wilfully, it may be inferred by the jury that said taking and carrying away was malicious. The term "malicious" signifies the intentional doing of a wrongful act without legal cause or excuse. To constitute a malicious taking and carrying away, it is not necessary that such taking and carrying away should be done out of spite or ill will of any kind. The term wilfully signifies not by accident or mistake. Every man is conclusively presumed to know the law to the extent, that no man's ignorance of the law, or mistake in the law, can exonerate him from liability for infraction of the law. The term wilfully signifies intentionally. If then and there the defendant intended to enter on the premises occupied by Casper Hagist, and to forcibly seize, take and carry away certain shocks of wheat, owned in

whole or in undivided part by Casper Hagist, and held by him as and for his property, and if then and there the defendant did so enter, take and carry away said grain, without said Casper Hagist's consent and against his will, by force and violence, with intent on defendant's part to secure indebtedness claimed by defendant, or to obviate the expense or risk of a landlord's proceedings in court, then said entering, taking and carrying away of said grain was wrongful and without legal cause or excuse, and it would be no defense that defendant then and there intended to account for said wheat, or that he did afterwards fully account for said wheat, and the jury upon such finding, if made by them, will be authorized to infer that said entry, taking and carrying away was malicious, and upon such finding, if made, the jury must find the defendant guilty."

On the other hand, the theory of the defendant will appear from the two following instructions, requested by the defendant and refused : "The court instructs the jury that, if they believe from the evidence that, in the fall of 1888, the defendant let to the prosecuting witness, Casper Hagist, twenty-five acres of land mentioned or referred to in the evidence, and that the wheat thereon was sown by Hagist, and that the landlord, the defendant, under an agreement with said Hagist, furnished the seed to be sown, and the land upon which it was sown, and the said Hagist under said agreement sowed said wheat and harvested the same, and that under said agreement the defendant and said Hagist were to thresh said wheat and share equally in the labor and expense of threshing the same, then said defendant and the said Hagist were croppers together on shares and tenants in common of said wheat, when the same was harvested and while standing in the shock, and the jury must find the defendant not guilty."

"The court instructs the jury that, if they find from the evidence in this case that the defendant was

half-owner of the wheat mentioned in the evidence, and had a further claim on the half share of the prosecuting witness for work and labor done by defendant, under an agreement with the prosecuting witness, in which it was stipulated that he should receive, as compensation for said work and labor, such further share in said wheat as would remunerate him for said work and labor, according to the market value of said wheat when threshed, then they must find the defendant not guilty.''

The substantial question presented by this record is whether there was evidence tending to show such an exclusive possession and right of exclusive possession of the wheat in Hagist, as brought the act of the defendant, in seizing it into his own exclusive possession for the purpose of securing himself in the payment of what he claimed was due to him from Hagist, within the terms of the criminal statute above set out. The question is not free from difficulty; and, while the prosecuting attorney has gone to the needless expense of printing the entire evidence, which we could have read as well in the type-written transcript, and even better, neither he nor the counsel for the defendant has given us that aid which the difficulty of the question demands.

The learned counsel for the defendant does not ask us to hold that the act of the defendant in seizing the exclusive possession of the wheat was a lawful act; but he asks us to hold that it was not a criminal act within the intendment of the statute. His position, if we understand it correctly, is, that the defendant and Hagist were tenants in common of this wheat; that the act of the defendant in seizing the exclusive possession of the wheat was made under a mistaken belief as to his rights in the premises, and in good faith for the purpose of securing the payment of what Hagist owed him, and, therefore, that it was not such a malicious trespass as the statute intends to redress. On the other hand the prosecuting attorney takes the position that the evidence

neither proves, nor tends to prove, a tenancy in common or a partnership in respect of the wheat.

The decision of. the supreme court in *Johnson v. Hoffman*, 53 Mo. 504, seems to show that, in respect of the land, Hagist was the tenant of the defendant in such a sense that the defendant could not oust him from the possession of it ; and that in respect of the wheat which was raised on the land, Hagist and the defendant were tenants in common. The subsequent decision of the supreme court in *Donnell v. Harshe*, 67 Mo. 170, seems to show that, while the defendant and Hagist were not partners in the business of raising the crop of wheat, in a commercial sense, yet they were tenants in common of the wheat itself ; and the cases cited and analyzed by the court in its opinion seem to confirm this statement. It will be perceived that the court, in the second instruction given of its own motion, allowed the jury to convict the defendant, although they might find that Hagist owned the wheat only in undivided part. It must be conceded, under the undisputed evidence, that both parties had the right to enter upon the land for the purpose of carrying out the object of the contract, that is, the threshing of the wheat; and this feature of the evidence seems to decide the case against the state. It may fairly be presumed that, according to the terms of the contract as detailed by Hagist, either party had the right to take possession of the wheat for the purpose of threshing it. The contract nowhere provided *at what place* the wheat should be threshed. It nowhere provided that it should not be removed upon land other than that upon which it had been grown for that purpose, or that it should not, for that purpose, be removed upon land which was in the exclusive possession of the defendant.

The view does not seem to be admissible under the evidence, that Hagist was to be regarded merely as the tenant of defendant, and, as such, entitled to the exclusive possession of the wheat until it should be threshed.

The evidence seems to be consistent only with the view, that Hagist and the defendant were tenants in common of the wheat, and that either of them might take possession of it, and do what was necessary for the purpose of threshing it.  If such was their relation, then the defendant did not commit even a civil trespass in doing what he did ; for it is the law, settled in a book as old as Littleton on Tenures, that trespass will not lie by one tenant in common against his cotenant for the act of the latter in taking exclusive possession of the common property, it being personal property.   Littleton, speaking of tenants in common, said :  " If one take the whole to himself out of the possession of the other, the other hath no remedy but to take this from him who hath done to him the wrong, to occupy, etc., when he can see his time."  Co. Litt. 200 *a.*   The well-understood rule in regard to a tenancy in common of chattels is, that it is only for a *destruction* of common property, or for an act which is tantamount thereto, that one tenant in common can maintain an action of trespass against his cotenant. *Lucas v. Wasson*, 3 Dev. ( Law N. C.) 398 ;  s. c., 24 Am. Dec. 266 ;  *Welch v. Clark*, 12 Vt. 681 ;  *Tubbs v. Richardson*, 6 Vt. 442 ; s. c., 27 Am. Dec. 570 ; *Oviatt v. Sage*, 7 Conn. 95.

We cannot, of course, hold that the legislature in enacting the criminal statute, under which this prosecution is brought, intended to make that a criminal trespass which would not be a civil trespass under the principles of the common law.  We, therefore, order that the judgment of the circuit court be reversed and the defendant discharged.   All the judges concur.